IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALPHONZO GREEN, a minor c/o ALPHONZO KING<br>*Plaintiff* | : : : : : | CIVIL ACTION<br><br>NO. 14-3685 |
| v. | : : | |
| CHESTER UPLAND SCHOOL DISTRICT, *et al.*<br>*Defendants* | : : : | |

NITZA I. QUIÑONES ALEJANDRO, J.                                                           JANUARY 30, 2015

## MEMORANDUM OPINION

### INTRODUCTION

Before this Court is a *motion to dismiss* filed by Defendant Chester Upland School District ("Defendant"), pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(6), which seeks the dismissal of civil rights claims asserted under 42 U.S.C. §1983 ("§1983"), against the school district by Alphonzo Green ("Plaintiff"), [ECF 12], and the response in opposition. [ECF 15]. The issues presented in the motion have been fully briefed, and for the reasons stated herein, the motion to dismiss is granted.[1]

### BACKGROUND

Plaintiff filed a complaint against Defendant on June 16, 2014, [ECF 1], an amended complaint on August 1, 2014, [ECF 6], and a second amended complaint on August 28, 2014,[2]

---

[1] In ruling on the motion to dismiss, this Court also considered Defendant's reply, [ECF 18], Plaintiff's sur-reply, [ECF 19], and the allegations in the second amended complaint. [ECF 11].

[2] Each of the amended complaints was filed in response to Defendant's motion to dismiss. The complaints named as a party defendant the City of Chester. On October 9, 2014, the City of Chester was voluntarily dismissed as a party. [ECF 17].

[ECF 11], seeking monetary damages for an alleged violation of his civil rights under §1983. Specifically, Plaintiff asserts that Defendant failed to protect him from being assaulted by an individual who trespassed on school property. He further contends that the assault occurred because of Defendant's decision to not issue identification cards to the student body; a decision deprived him of rights provided by the Fourth and Fourteenth Amendments.

On September 16, 2014, Defendant filed the instant motion to dismiss. When ruling on this motion, this Court must accept, as true, the relevant factual allegations in the second amended complaint. These allegations can be summarized as follows:

> During the 2012-2013 school year, Plaintiff was a ninth grade student at Chester Upland School, which is operated by Defendant. (Sec. Amend. Comp. at ¶¶3, 6). Sometime during that school year, Defendant's Superintendent and/or Principal decided not to issue identification cards to the school's students. (*Id.* at ¶7). According to Plaintiff, as a result of this decision, trespassers were able to enter the school, unauthorized, because school faculty and staff members were unable to verify whether the trespassers were or were not students. (*Id.* at ¶10). Defendant was aware of an increase of instances in which unauthorized trespassers entered the school. (*Id.* at ¶11).
>
> On May 3, 2013, a trespasser posing as a student bypassed security and entered the school property, (*Id.* at ¶14), and assaulted various students, including Plaintiff, in honor of "National Fight Day." (*Id.* at ¶¶15-17). Plaintiff's attack was recorded and uploaded to the internet. (*Id.* at ¶17). As a result of the attack, Plaintiff suffered multiple injuries and, subsequently, transferred from the school. (*Id.* at ¶ 19).

## LEGAL STANDARD

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The complaint must do more than merely allege the plaintiff's entitlement to relief; it must

"show such an entitlement with its facts." *Id.* (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)) (alterations in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.* To survive a motion to dismiss under Rule 12(b)(6), "a plaintiff must allege facts sufficient to 'nudge [his] claims across the line from conceivable to plausible.'" *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

In the second amended complaint, Plaintiff essentially claims that Defendant's action in not issuing student identification cards violated his due process and equal protection rights guaranteed by the Fourteenth Amendment, and his right to be free from unlawful seizures under the Fourth Amendment. Each of these claims will be addressed separately.

To state a claim under §1983, a plaintiff must allege a violation of a right secured by the Constitution and/or laws of the United States and show that the deprivation allegedly suffered was committed by a person acting under color of state law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). Section 1983 does not provide substantive rights, but instead, "provides a remedy for the deprivations of rights established elsewhere in the Constitution or federal laws." *Kopec v. Tate*, 361 F.3d 772, 775-76 (3d Cir. 2004). Therefore, to establish a §1983 violation, Plaintiff must

allege facts sufficient to establish that Defendant, acting under color of state law, deprived Plaintiff of a right secured by the Constitution and/or by a law of the United States. *See Robb v. City of Philadelphia*, 733 F.2d 286, 290-91 (3d Cir. 1984). For purposes of the §1983 claim, it is not disputed that Defendant, a public high school, is a state actor. *See Daniels v. School Dist. of Philadelphia*, 982 F.Supp.2d 462, 477 (E.D. Pa. 2013); *Mohammed v. School Dist. of Philadelphia*, 355 F.Supp.2d 779, 782 (E.D. Pa. 2005).

A governmental entity, such as a public high school, however, may not be held liable under §1983, for constitutional violations caused solely by its employees or agents, based on the principle of *respondeat superior*. *Monell v. New York Department of Social Services*, 463 U.S. 658, 690 (1978). Rather, liability against a public entity under §1983 can be found for monetary, declaratory, or injunctive relief only where the alleged unconstitutional action, implements or executes a policy statement, ordinance, regulation, or a decision officially adopted and promulgated by that public body's officers. *Id.* at 694. Thus, liability may be imposed on a public entity, such as Defendant, where its' official "policy or custom" "causes" an employee to violate another person's constitutional rights. *Id.*; *see also Brown v. School Dist. of Philadelphia*, 456 F.App'x 88, 90 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 (3d Cir. 2010)).

As set forth by the Third Circuit Court of Appeals:

> A governmental policy or custom can be established in two ways. Policy is made when a "decision maker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

4

*Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). The existence of a custom "requires proof of knowledge and acquiescence by the decision maker." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). In either instance, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990); *see also Andrews*, 895 F.2d at 1480.

In addition, to establish municipal liability, a plaintiff must first show an underlying constitutional violation. *See Marable v. West Pottsgrove Twp.*, 176 F.App'x 275, 283 (3d Cir. 2006) ("[A] municipality may not incur *Monell* liability as a result of the actions of its officers when its officers have inflicted no constitutional injury."). Therefore, in order to state a §1983 claim against Defendant, Plaintiff must allege facts to demonstrate: (1) the deprivation of a constitutional right; and (2) that such deprivation arose out of an official policy or custom of Defendant. With these legal principles in mind, each of Plaintiff's §1983 claims is analyzed.

*Plaintiff's Fourteenth Amendment Due Process Claim*

Plaintiff alleges that Defendant violated his Fourteenth Amendment due process rights by failing to protect him from the assault of an individual who, without permission, trespassed onto school property. Specifically, Plaintiff contends that this violation would not have occurred had Defendant (a) issued identification cards to the students; (b) required identification, registration, and the issuance of a visitor's pass to outside (non-students or staff) individuals; (c) provided better supervision over the students; and (d) provided adequate security in the school.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. While courts recognize that the due process clause protects an individual's interest in his/her bodily integrity,

the Constitution imposes no affirmative duty on municipal entities to protect citizens from the acts of private individuals. *Deshaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195-96 (1989); *Morrow*, 719 F.3d at 166. In *DeShaney*, the Supreme Court noted that "nothing in the language of the due process clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. "Its purpose was to protect the people from the State, not to ensure that the State protected them from each other." *Id.* at 196.

The Third Circuit Court has interpreted *DeShaney* as "stand[ing] for the harsh proposition that even though state officials know that a person is in imminent danger of harm from a third party, the fourteenth amendment imposes upon those state officials no obligation to prevent that harm." *Horton v. Flenory*, 889 F.2d 454, 457 (3d Cir. 1989); *see also Morrow*, 719 F.3d at 166 (stating, as "a general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause.") (quoting *DeShaney*).

Relying on the above-cited case law and the facts in this matter, this Court finds that Defendant has no constitutional obligation to prevent private student-on-student or trespasser-on-student violence. However, our analysis is incomplete. As an exception to this general principal, a state may be liable for its failure to protect its citizens against private violence when the state (1) enters into a "special relationship" with the plaintiff or (2) creates a danger which results in foreseeable injury to a discrete plaintiff. *See Ye v. United States*, 484 F.3d 634, 637 (3d Cir. 2007); *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996).

*1. Special Relationship Exception*

While a government entity generally does not have a constitutional obligation to protect citizens from the conduct of private individuals, the Constitution does "impose[] upon the State

6

affirmative duties of care and protection" where a "special relationship" exists between the state and a particular individual. *Morrow*, 719 F.3d. at 167. A state actor's duty to protect a particular individual does not arise merely from the state actor's "knowledge of the individual's predicament or from its expressions of intent to help him . . . ." *Id.* at 168. Rather, such duty arises only where the state actor takes the person into its custody without consent and, by virtue of such custody, limits the individual's freedom to act. *Id.* A "special relationship" exists only in the limited circumstances where the state has taken a person into custody or has otherwise prevented that person from helping him/herself. *Kneipp*, 95 F.3d at 1204-05; *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1370 (3d Cir. 1992); *see also Torisky v. Schweiker*, 446 F.3d 438, 446 (3d Cir. 2006) (holding that the special relationship exception "must be confined to cases in which a person is taken into state custody against his will."); *Regalbuto v. City of Philadelphia*, 937 F. Supp. 374, 379-80 (E.D. Pa. 1995), *aff'd*, 91 F.3d 125 (3d Cir. 1996) (holding that the "state must affirmatively act to curtail the individual's freedom such that he or she can no longer care for him or herself.").

Relevant to this action, the Third Circuit Court has repeatedly held that publicly-funded schools, such as Defendant, do not have a special relationship with their students that would create "a *constitutional* duty to protect students from private actors." *Morrow*, 719 F.3d at 170; *see also D.R.*, 972 F.2d at 1369-72 (holding that no special relationship existed between the school and student); *Brown v. School District of Philadelphia*, 456 F.App'x 88, 90 n. 5 (3d Cir. 2011) (noting the existence of the special relationship exception yet stating that "a student in

7

school does not have that relationship with the state."). Consequently, this Court finds that no "special relationship" existed between Defendant and Plaintiff.[3]

### 2. *State-Created Danger Exception*

The Third Circuit Court first adopted the so-called "state-created danger" exception in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996). There, the court held that to assert a viable §1983 claim under the "state-created danger" exception, a plaintiff must allege facts to support each of the following elements: (1) the harm ultimately caused was foreseeable and fairly direct; (2) defendant acted with a degree of culpability that shocks the conscience; (3) there existed some relationship between defendant and plaintiff such that the plaintiff was a foreseeable victim of defendant's acts or a member of a discrete class of persons subjected to the potential harm brought by the defendant's actions; and (4) the defendant used its authority to create a danger to the plaintiff or that rendered the plaintiff more vulnerable to danger than had Defendant not acted at all. *Id.* at 1205; *see also Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). In the context of the state-created danger analysis, negligent conduct does not rise to the level of conscience shocking. *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006).

In its motion, Defendant argues that the facts alleged in the second amended complaint fail to satisfy the requisites of the state-created danger exception. As set forth below, this Court agrees and, further, finds that Plaintiff has failed to meet the above-noted fourth element of a state-created danger claim and will, therefore, limit its analysis to this element. *See Morse v. Lower Merion School Dist.*, 132 F.3d 902, 914 (3d Cir. 1997) (holding that the plaintiff's failure to meet any one of the elements requires dismissal of claim). Because the fourth element has not

---

[3] Neither party, nor this Court, has identified any authoritative decision in which a public high school was held to have such a constitutional obligation to its students.

8

been met, this Court makes no findings as to whether Plaintiff has alleged facts sufficient to meet any of the other three elements.

To establish the fourth element of a state-created danger claim, Plaintiff must allege facts showing: (1) that Defendant exercised its authority and (2) took an affirmative action; and (3) that the action taken created a danger to Plaintiff or rendered Plaintiff more vulnerable to danger than had Defendant not acted at all. *See Ye*, 484 F.3d at 639. "[I]t is [the] misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause." *Bright*, 443 F.3d at 282. In other words, "[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiffs' detriments in terms of exposure to danger." *D.R.*, 972 F.2d at 1374. Thus, to satisfy this fourth element, Plaintiff must also allege facts to establish "a direct causal relationship between the affirmative act of the state and plaintiff's harm." *Kaucher*, 455 F.3d at 432 (explaining that "the fourth element is satisfied where the state's action was the 'but for cause' of the danger faced by the plaintiff.").

However, the Third Circuit Court has repeatedly rejected state-created danger claims brought against public school districts for violence committed against students, *even* where school officials were alleged to have known of the dangerous conditions within the school that ultimately resulted in injury to the plaintiff, on the ground that the school did not affirmatively act to create the danger. *See e.g.*, *Morrow*, 719 F.3d at 178-179 (holding that school's failure to expel harassing student, and permitting her to return following suspension and board plaintiff's bus did not constitute requisite affirmative act for state-created danger); *Brown*, 456 F.App'x at 89-90, (holding that school's failure to expel or appropriately punish a violent student does not constitute a sufficient affirmative act for state-created danger); *D.R.*, 972 F.2d 1364 (holding that

9

school's failure to adequately address and remediate known physical and sexual misconduct by students did not constitute an affirmative act for state-created danger).

To further expound, in *Morrow*, 719 F.3d 160, two sisters were subjected to a series of ongoing verbal threats and physical assaults by a fellow student, including a physical attack in the school lunch room, an attempt to throw one of the victims down the school's stairs, and a strike to one victim's throat. *Id.* at 164. Each of these incidents was reported to the school. In response, the school temporarily suspended the aggressor; a juvenile court adjudicated the aggressor delinquent and ordered the aggressor to have no contact with the victims. *Id.* Despite the court order and the school's knowledge of the incidents, the school district failed to keep the aggressor away from the victims, and the verbal and physical assaults continued. *Id.* The school advised the victims' parents to relocate their children to another school, and declined to remove the aggressor. *Id.* at 164-65. The victims brought §1983 actions against the school for the alleged violations of the victims' due process rights, arguing that the defendant public school had a duty to protect them because the school created or exacerbated a dangerous condition. *Id.* at 177. The Third Circuit Court held that a public school's failure to use its disciplinary authority and to follow its own internal procedures was not sufficient to establish that the state affirmatively used its authority to create a danger to the student. *Id.* at 177-79.

In *Brown*, 456 F.App'x 88, the plaintiff, a sophomore high school student with mild mental retardation, and her mother advised a teacher and an assistant principal that another student had assaulted the plaintiff after she had failed to meet him in the library for oral sex. *Id.* at 90. The teacher and/or assistant principal promised that the school would provide the plaintiff with one-on-one adult supervision. Notwithstanding the promise, two weeks later plaintiff was sexually assaulted at the school by five fellow students. *Id.* at 89. Plaintiff asserted that the

10

school was liable under §1983 for its failure to have fulfilled its promise of providing the plaintiff adult supervision and its failure to expel or appropriately discipline violent students. *Id.* at 90. Affirming the district court's dismissal of the claims, the Third Circuit Court held that the plaintiff had failed to allege the required affirmative acts on the part of the school to establish a state-created danger. *Id.* at 92.

Similarly, in *Pagan v. City of Philadelphia*, 2012 WL 1965386 (E.D. Pa. May 31, 2012), the plaintiff, a special needs student, was severely beaten by another student in a school stairwell. *Id.* at *1, 3. There, plaintiff alleged that the school district violated his substantive due process right to personal bodily integrity through its acquiescence in a policy or custom of failing to provide adequate security to students. *Id.* at *2-4. The plaintiff had further alleged that the school was aware that other students had been assaulted by students in the school stairwells. *Id.* at *5. The court dismissed the plaintiff's due process claim because the plaintiff had alleged school conduct that amounted only to omissions and held that "only the affirmative exercise of state authority is actionable as state-created danger." *Id.* at 27.

The instant case is, in many respects, similar to the above cited cases. Like the plaintiffs in the cited cases, Plaintiff has not pled any facts to establish that Defendant affirmatively acted to place him in danger or increased danger. Rather, Plaintiff has alleged, at most, that Defendant was aware of "higher instances of trespassers" at the school as a result of its failure to implement and enforce an entry policy of utilizing student identification cards, and did little to prevent the assault. While Plaintiff contends that these alleged *omissions* caused his injuries, he has failed to allege any affirmative conduct by Defendant that created a danger to Plaintiff or that exacerbated a danger that Plaintiff otherwise faced. Absent allegations of such affirmative conduct by

11

Defendant, Plaintiff has failed to allege sufficient facts to establish a viable claim under the state-created danger exception.[4]

Plaintiff's attempt to cast the school district's decision to not implement an entry policy utilizing student identification cards as an actionable, affirmative act was rejected by the Third Circuit Court in *Morrow*. There, the Court provided guidance for distinguishing "affirmative acts" from "omissions" in a state-created danger context. As previously described, in *Morrow*, the plaintiff students argued that the defendant school district created a danger by affirmatively permitting a delinquent student to return to school rather than permanently expelling her. *Morrow*, 719 F.3d at 179. Rejecting the plaintiffs' argument, the Third Circuit Court held that plaintiffs could not satisfy the fourth prong of the state-created danger exception by merely recasting the 'omissions' upon which the claims were based as 'affirmative' acts. "[M]erely restating the Defendants' inaction as an affirmative failure to act does not alter the passive nature of the alleged conduct." *Id.*

Similarly, Plaintiff contends that Defendant's "decision to forego identification cards was an affirmative act resulting in harm to the Plaintiff." (Plaintiff's Brief at p. 9). While Plaintiff attempts to characterize his claims as being based upon Defendant's affirmative acts and not on Defendant's omissions and/or failures to act, a fair reading of the second amended complaint reveals that Plaintiff's claims are premised upon Defendant's decision to not act, *i.e.*, "decision not to issue" student identification cards. (*See* Sec. Amend. Comp. ¶¶7, 8, 10, 12, 14 and 29). Plaintiff's attempt to frame Defendant's decision to not act as an affirmative act, however, "does

---

[4] To the extent Plaintiff seeks to impose liability on Defendant based upon its alleged failure to properly implement and/or enforce its own security and entry procedures, Defendant's failures amount to, at most, negligence, and not a constitutional violation. *Cf.*, *Morrow*, 719 F.3d at 178 ("[W]e decline to hold that a school's alleged failure to enforce a disciplinary policy is equivalent to an affirmative act under the circumstances here.").

not alter the passive nature of the alleged conduct." *Morrow*, 719 F.3d at 179. As in *Morrow*, Plaintiff's re-characterization of Defendant's omission and/or failure to act as an affirmative act is insufficient to meet the fourth element of the state-created danger exception.

Under the above-noted analysis provided by the Third Circuit Court, this Court finds that Plaintiff is unable to meet the requirement s of a state-created danger exception and, therefore, his due process claims fail.

*Plaintiff's Equal Protection Claim*

Plaintiff also asserts a §1983 claim contending that Defendant violated his constitutional right to equal protection. To succeed on a §1983 equal protection claim, Plaintiff must allege facts demonstrating "purposeful discrimination" and that he "receiv[ed] different treatment from that received by other individuals similarly situated." *Andrews*, 895 F.2d at 1478; *see also Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196 (3d Cir. 2009). To meet the *prima facie* elements, Plaintiff must allege that he was: (1) a member of a protected class; (2) similarly situated to members of an unprotected class; and (3) treated differently from members of the unprotected class. *Oliveira v. Twp. of Irvington*, 41 F.App'x 555, 559 (3d Cir. 2005); *Keenan v. City of Philadelphia*, 983 F.2d 459, 465 (3d Cir. 1992).

A fair reading of the second amended complaint reveals that Plaintiff has failed to allege any facts to show that he was the victim of purposeful discrimination or that he was treated differently because of a protected characteristic. As stated, Plaintiff's claims are essentially based on allegations that Defendant failed to protect him from a trespasser's assault. Plaintiff has not alleged, however, that the trespasser's assault was targeted at him or others like him because of some protected trait.

13

Plaintiff's second amended complaint is also devoid of any allegation that Defendant somehow treated him less favorably than it treated others. In fact, Plaintiff makes no attempt to identify any similarly-situated individuals who were treated differently than he was. Based on the facts alleged in the amended complaint and the absence of requisite facts to establish the violation of his right to equal protection, this Court cannot find that Plaintiff received different treatment on the basis of any protected characteristic in violation of the equal protection clause.

*Plaintiff's Fourth Amendment Claim*

Plaintiff also asserts that Defendant violated his Fourth Amendment rights by subjecting him to an illegal seizure. (*See* Sec. Amend. Comp. at ¶23). A person is seized under the Fourth Amendment when "his freedom of movement is restrained" either "by means of physical force or a show of authority." *Gwynn v. City of Philadelphia*, 719 F.3d 295, 300 (3d Cir. 2013). An unconstitutional seizure is defined as "a governmental termination of freedom of movement through means intentionally applied." *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989).

Plaintiff's second amended complaint is completely lacking of any factual allegations to support an intentional "seizure" of him *by Defendant* within the meaning of the Fourth Amendment. The second amended complaint does not allege that Defendant, through any of its agents, at any point, physically restrained him or used its authority in any way to confine him. The only facts pertaining to a "seizure" are those relating to the trespasser's assault of him. Plaintiff has not alleged facts, nor can he, that can establish the trespasser as either a state actor or Defendant's agent. Plaintiff's allegations as to the trespasser's assault of him are insufficient to establish a Fourth Amendment claim against Defendant. Under the circumstances, this claim against Defendant fails, as a matter of law.

*Leave to Amend*

Although the Third Circuit Court has directed that a district court must ordinarily provide a civil rights plaintiff an opportunity to file an amended complaint where the original complaint is subject to dismissal under Rule 12(b)(6), *see Phillips*, 515 F.3d at 245 (reiterating the rule that leave to amend must be granted *sua sponte* in civil rights actions, "unless such an amendment would be inequitable or futile."), it is this Court's opinion that any such attempt to amend a third time would be legally futile. This Court has dismissed Plaintiff's civil rights claims against Defendant, not because the complaint is factually deficient, but rather, because the detailed facts set forth in the second amended complaint fail, as a matter of law, to establish a constitutional violation for purposes of §1983 liability under either the due process "special relationship" or "state-created" danger exceptions, under the equal protection clause, or under any claim asserted. Thus, any attempt to amend the complaint a third time would be futile.

**CONCLUSION**

For the reasons stated, Defendant's motion to dismiss is granted, and Plaintiff's claims are dismissed, with prejudice. An order consistent with this Memorandum Opinion follows.

NITZA I. QUIÑONES ALEJANDRO, J.